```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**JOHN MANCHIN, III, d/b/a**
**Manchin Family Pharmacy**
**d/b/a/ The Drug Store,**

      **Plaintiff,**

**v.**  //  **CIVIL ACTION NO. 1:12CV93**
                            **(Judge Keeley)**

**QS-1 DATA SYSTEMS,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE**
**MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

Pending before the Court is the defendant's motion to dismiss for improper venue (dkt. no. 17) and the plaintiff's motion to amend his complaint (dkt. no. 22). For the reasons that follow, the Court **GRANTS IN PART** the defendant's motion, **DENIES WITHOUT PREJUDICE** the plaintiff's motion, and **TRANSFERS** this case to the Spartanburg Division of the United States District Court for the District of South Carolina.

**I.**

**A.**

This case arises from two data systems license and sales agreements (the "Contracts") made between John Manchin, III ("Manchin"), and QS-1 Data Systems ("QS-1"), by which Manchin agreed to pay QS-1 to install, maintain, and update pharmacy management software called NRx in two of his pharmacies, the

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

---

Manchin Family Pharmacy and The Drug Store, located in West Virginia. Manchin alleges that the hardware and software sold and installed by QS-1 did not operate in accordance with the contracts and QS-1's representations.

On May 3, 2012, Manchin filed a complaint against QS-1 in the Circuit Court of Harrison County, West Virginia, alleging six causes of action: (1) breach of contract, (2) breach of good faith and fair dealing, (3) breach of express warranties, (4) breach of implied warranty of merchantability, (5) breach of implied warranty for fitness of a particular purpose, and (6) misrepresentation.[1] QS-1 timely removed this case under 28 U.S.C. §§ 1441 and 1446 on June 7, 2012, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

**B.**

Both of the Contracts at issue in this case contain the following clause:

> Governing Law and Jurisdiction. This Agreement and performance hereunder shall be governed by the laws of the State of South Carolina. <u>The sole jurisdiction for any legal proceedings under this Agreement shall be South Carolina.</u>

---

[1] Manchin has since moved to amend his complaint to add causes of action for fraud in the inducement and constructive fraud. (Dkt. No. 22).

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS** 1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

(Dkt. No. 6-1 at 2) (emphasis added); (Dkt. No. 6-2 at 2) (emphasis added).

QS-1 argues that, pursuant to this clause, venue is improper in this forum and this case must either be dismissed under Fed. R. Civ. P. 12(b)(3) or transferred under 28 U.S.C. § 1406(a). Manchin argues that the forum selection clause is unreasonable – and therefore unenforceable for several reasons: the clause itself is vague; he failed to understand its importance; and proceeding in South Carolina would be both expensive and inconvenient.[2]

## II.

In the Fourth Circuit, the correct procedural vehicle for bringing a motion to dismiss based on improper venue under a forum selection clause is Fed. R. Civ. P. 12(b)(3). Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006); see also Albemarle Corp. v. Astrazeneca UK Ltd., 628 F.3d 643 (4th Cir. 2010) (affirming, based on forum selection clause, dismissal of a case removed from state court). When

---

[2] Manchin also contends that the Court is precluded from analyzing the Contracts because they "are not before the Court in their entirety." (Dkt. No. 21). This argument, which was already of dubious validity, has been thoroughly mooted by QS-1's attachment of the full Contracts to its reply brief.

3

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS** 1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

analyzing a forum selection clause, district courts will apply federal law. Albemarle Corp., 628 F.3d at 650.

Under the federal standard, forum selection clauses are presumptively valid and should be enforced unless enforcement would be unreasonable. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); see also Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996). Under this standard, forum selection clauses are unreasonable if:

> (1) their formation was induced by fraud or overreaching;
> (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum;
> (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or
> (4) their enforcement would contravene a strong public policy of the forum state.

Allen, 94 F.3d at 928. "The party opposing the application of the forum selection clause bears a heavy burden of proving unreasonableness." Sauvageot v. State Farm Mut. Auto. Ins. Co., No. 5:11CV13, 2011 WL 2680508, at *2 (N.D. W. Va. July 8, 2011); see also Bryant Elec. Co. v. City of Fredericksburg, 762 F.2d 1192, 1197 (4th Cir. 1985) ("The burden is on the objecting party to show that a forum selection clause is unreasonable or unjust[.]").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

### III.

#### A.

Before a court can assess whether a forum selection clause is "unreasonable," it must determine whether the clause is mandatory or permissive. Albemarle Corp., 628 F.3d at 649; Eisaman v. Cinema Grill Systems, Inc., 87 F. Supp. 2d 446, 449 (D. Md. 1999). As the United States Court of Appeals for the Fourth Circuit has explained, "[a] general maxim in interpreting forum-selection clauses is that 'an agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.'" IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (quoting John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc., 22 F.3d 51, 53 (2d Cir. 1994)).

Here, both Contracts state that "[t]he sole jurisdiction for any legal proceedings under this Agreement shall be South Carolina." (Dkt. No. 6-1 at 2) (emphasis added); (Dkt. No. 6-2 at 2) (emphasis added). The Court finds that the language "sole" and "shall" is language of exclusion that makes the forum selection clauses mandatory. Moreover, although Manchin asserts claims sounding in both tort and contract, all of his causes of action -

5

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**                              **1:12CV93**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

in both the original and proposed amended complaints - arise from the formation and performance of the agreements. Accordingly, there can be no colorable debate about whether the mandatory forum selection clause applies to his claims. It does. See, e.g., Brown v. Partipilo, No. 1:10CV110, 2010 WL 3979802, at *4 (N.D. W. Va. Oct. 8, 2010).

**B.**

Having determined that the forum selection clause at issue is mandatory, the Court must next consider whether it is reasonable. Of the four "unreasonableness" standards set forth in Allen, Manchin's argument focuses on prongs (1), (2), and (4).

**1.**

The first "unreasonableness" standard is whether the formation of the forum selection clause "was induced by fraud or overreaching." Allen, 94 F.3d at 928. On this front, Manchin contends that the cause of action for misrepresentation in the original complaint suggests a further claim of fraud in the inducement to contract. (Dkt. No. 21 at 10). Additionally, he points out that his "proposed First Amended Complaint alleges that all aspects of the contract were fraudulently induced." Id. at 8.

6

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**                              1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

Manchin misapprehends the applicable standard. As this Court has previously held, "for a forum selection clause to be invalid for fraud, <u>the clause itself</u>, not the agreement, must have been so nefariously obtained." <u>Brown</u>, 2010 WL 3979802 (emphasis added) (citing <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 (1974)). Indeed, "the party arguing that the clause should not be enforced for fraud or overreaching must specifically allege that the fraud relates to the forum selection clause, not to the contract as a whole." <u>Sheldon v. Hart</u>, No. 5:09CV51, 2010 WL 114007 (N.D. W. Va. Jan. 8, 2010) (citing <u>Scherk</u>, 417 U.S. at 519 n.14). In this way, "'courts may ensure that more general claims of fraud will be litigated in the chosen forum, in accordance with the contractual expectations of the parties.'" <u>Id.</u> (emphasis omitted) (quoting <u>Lipcon v. Underwriters at Lloyd's London</u>, 148 F.3d 1285, 1296 (11th Cir. 1998)). Consequently, Manchin's complaints of fraud as to the entire contract, and not the forum selection clause in particular, are insufficient to satisfy the first prong of <u>Allen</u>.

Further, to the extent that Manchin also alleges that he either did not read or did not understand the forum selection clauses in the Contracts, his ignorance alone is not indicative of fraud or overreaching. There is no evidence that QS-1 actively

7

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**                 **1:12CV93**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

misrepresented or concealed these provisions, and the clauses themselves are quite clear. They are short, do not use confusing legalese,[3] and, though they appear in the "Miscellaneous" portion of the contract, are not hidden. Rather, they are the same size and same format as the rest of the Contracts, which, aside from Exhibit A, are only two pages long. To the extent that Manchin signed a contract that he either did not read or did not understand, he did so at his peril.

**2.**

The second "unreasonableness" standard is whether "the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum." Allen, 94 F.3d at 928. Manchin argues that he will incur "massive expense" and "devastating inconvenience" if forced to litigate his claims in South Carolina, (dkt. no. 21 at

---

[3] Manchin attempts to rely on this Court's decision in Brown for the proposition that the term "jurisdiction" is confusing. 2010 WL 3979802, at *5. Brown, however, involved a contract between a lawyer and his client and was decided on the basis of the "inherently unequal nature of the parties' positions and the duty of a lawyer to ensure his client understands the terms of the prospective representation." Brown, 2010 WL 3979802 at *6. In this case, in contrast, the Contracts are between two business entities engaged in arms-length transactions. There is no indiction that QS-1 and Manchin had unequal bargaining positions, and QS-1 does not owe a fiduciary duty to Manchin as a lawyer owes a client.

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**  1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

11), surmising that his forced absence from his pharmacies for the anticipated four-day trial will "risk his licenses to run the businesses, his pharmacy licenses and substantial income." Id. at 13.

The Court is unimpressed by the magnitude of Manchin's concerns. Underscoring the "heavy burden" required to invalidate a presumptively valid forum selection clause, the Fourth Circuit' affirmance of a district court's enforcement of a forum selection clause that mandated venue in Amsterdam, The Netherlands despite the fact that the plaintiff was a college student, had no source of income, and "[could] not afford the extraordinary expense of traveling to Amsterdam and paying for attorneys there to prosecute [her] claims." Baker v. Adidas America, Inc., 335 F. App'x 356, 361 (4th Cir. 2009). The Fourth Circuit noted that "because Baker has not demonstrated that these burdens were unforeseeable to her when she ratified the agreement, we do not believe Baker has shown that enforcement of the forum-selection clause would be unjust." Id.

Here, Manchin undoubtedly foresaw the very inconvenience of which he now complains when he entered into the Contracts with QS-1. See Bremen, 407 U.S. at 17–18 (observing that "[w]hatever 'inconvenience' [the plaintiff] would suffer by being forced to

9

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**  1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting"). Nevertheless, he elected to sign the agreements, and he cannot now avoid the bargained-for forum simply because it will cause him some additional expense. See, e.g., Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3rd Cir. 1966) ("Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that [the complaining party] received under the contract consideration for these things."); Brown, 2010 WL 3979802, at *4 ("Mere inconvenience will not suffice to invalidate a valid forum selection clause." (citation omitted)); LTVN Holdings LLC v. Odeh, No. CCB-09-0789, 2009 WL 3736526, at *2 (D. Md. Nov.5, 2009) (The "increased expense of litigating outside the [plaintiff's] home state does not affect the validity of the forum selection clause.").

In sum, Manchin, at most, has shown that he will suffer some degree of increased inconvenience and expense if forced to litigate this action in South Carolina. He has not met his heavy burden of demonstrating that he "will for all practical purposes be deprived of his day in court." Allen, 94 F.3d at 928. "Absent that, there is no basis for concluding that it would be unfair, unjust, or

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**            1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

unreasonable to hold [him] to [his] bargain." Bremen, 407 U.S. at 18. As such, the Court will not set aside the forum selection clause on these grounds.[4]

**3.**

The final "reasonableness" factor looks to whether the enforcement of the forum selection clause "would contravene a strong public policy of the forum state." Allen, 94 F.3d at 928. Manchin's argument on this prong is somewhat confused - he contends that allowing QS-1 the "benefit" of the forum selection clause contravenes West Virginia's "undeniably strong public policy" against constructive fraud. (Dkt. No. 21 at 9). This is not the appropriate inquiry. As QS-1 points out, all states, including South Carolina, have public policies against fraud. This fact does not alter the unambiguous determination of the Supreme Court of the United States that forum selection clauses should be enforced even

---

[4] To the extent that Manchin attempts to paint the South Carolina forum as somehow "disconnected" from the instant controversy, the Court will simply note that QS-1 has been operating in South Carolina since 1977 and its parent company, JM Smith Corporation, is incorporated in South Carolina and has its principal place of business there. It is thus apparent that the forum selection clause was not meant to discourage Manchin from pursuing a legitimate claim, belying any bad-faith motive on QS-1's part. See, e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 595, 595 (1991).

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS** 1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

where "a dispute arising out of a [contract] is based upon an allegation of fraud." Scherk, 417 U.S. at 519 n.14. Rather, as forum selection clauses "are not contrary to public policy" in West Virginia, Caperton v. A.T. Massey Coal Co., 679 S.E.2d 223, 235 (W. Va. 2008), this prong of the Allen test can offer Manchin no relief.

**IV.**

For the reasons discussed, the Court finds that the forum selection clauses in the Contracts are valid, mandatory, applicable to the issues at hand, and thus enforceable. Manchin's complaint may therefore be dismissed on the basis of improper venue pursuant to Fed. R. Civ. P. 12(b)(3). However, "transfer is the preferred remedy to dismissal when a forum selection clause dictates that another federal forum is the proper venue for litigation." Petroleum Products, Inc. v. Commerce & Indus. Ins. Co., 2009 WL 4782063, *5 (S.D. W. Va. Dec. 4, 2009) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988)); see also Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001) (stating that it makes "better sense" to transfer rather than to dismiss). In this case, the forum selection clause provides that

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

Manchin could bring suit against QS-1 in any court in South Carolina. (Dkt. No. 6-1 at 2); (Dkt. No. 6-2 at 2).

If venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Whether to transfer or dismiss is within this Court's discretion. See, e.g., Smith v. Aegon USA, LLC, 770 F. Supp. 2d 809, 813 (W.D. Va. 2011). Based on the representations of QS-1's counsel, and after carefully balancing the public and private interests pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), the Court determines that the United States District Court for the District of South Carolina, Spartanburg Division, is the appropriate venue for this matter. As such, it:

1. **GRANTS IN PART** the defendant's motion to dismiss for improper venue (dkt. no. 17);
2. **DENIES WITHOUT PREJUDICE** the plaintiff's motion to amend (dkt. no. 22), subject to refiling in the proper forum;
3. **TRANSFERS** this action to the Spartanburg Division of the U.S. District Court for the District South Carolina; and
4. **ORDERS** that this case be **STRICKEN** from the docket of this Court.

**JOHN MANCHIN, III. V. QS-1 DATA SYSTEMS**                              1:12CV93

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
MOTION TO DISMISS [DKT. NO. 17], DENYING WITHOUT PREJUDICE
MOTION TO AMEND [DKT. NO. 22], AND TRANSFERRING CASE**

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

Dated: August 12, 2013.

                                          /s/ Irene M. Keeley
                                          IRENE M. KEELEY
                                          UNITED STATES DISTRICT JUDGE